22091

The STATE, Respondent, v. Peter Dawson DEAN, a/k/a James Marrow; Thomas Riley Rapp; Darling Pat Paterson, III; Dominick Anthony Piperata, a/k/a Steven Lee Harris; and Robert Bruce Rose, Appellants.

(317 S. E. (2d) 744)

Supreme Court

*Frank A. Rubino*, Coconut Grove, Fla. and *Richard J. Breibart*, Lexington, *for appellants Dean and Piperata.*

*James L. Mann, II*, Columbia, *for appellant Patterson.*

*Jack B. Swerling* and *David L. Lyle, Jr.*, Columbia, *for appellant Rose.*

*William P. Walker, Jr.*, Lexington, and *William Ravkind*, Dallas, Tex., *for appellant Rapp.*

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod, Asst. Attys. Gen. Harold M. Coombs, Jr.* and *Martha L. McElveen*, Columbia, and *Sol. Donald V. Myers*, Lexington, *for respondent.*

Heard April 18, 1983.

Decided May 1, 1984.

*Per Curiam:*

Appellants Dean, Patterson, Piperata, and Rose were convicted of conspiracy to traffic and trafficking in marijuana in a quantity greater than 2,000 pounds, but less than 10,000 pounds. Appellant Rapp was convicted of trafficking in mari-

juana in a quantity greater than 100 pounds, but less than 200 pounds. We affirm.

On April 14, 1981, Columbia police were notified by Atlanta drug enforcement agents that three men, appellants Dean, Rose, and Piperata, who fit the "drug courier profile" would be arriving at the Columbia airport. Upon their arrival, the three men were placed under police surveillance.

After leaving the plane, appellants Rose and Piperata were met by a third individual, who drove them to a local motel, where Piperata registered for a party of two in the name of James Marrow (the alias used by Dean), who had remained at the airport.

Soon thereafter, Rose and Piperata met two other men and drove to the home of appellant Patterson, where they backed their automobile into a covered garage area and turned off the garage lights. During the next twenty minutes appellants conducted some activity in the garage, as evidenced by police observations of someone continually shining a flashlight inside the garage.

Appellants Rose and Piperata then left the Patterson residence in two cars, one being the recently garaged automobile, and drove to a parking lot in Hilton, South Carolina. After a brief stop the two cars separated, one automobile returning to the motel, the other, the recently garaged car, proceeding in the direction of Charleston.

The next morning, appellants Rose and Piperata were followed to Hilton, where they were met by appellant Rapp, whose car was pulling a heavily loaded trailer. These appellants then returned to the Patterson residence, where the trailer was backed into the garage area. While the trailer remained in the garage, another car left the Patterson home and drove repeatedly past the entrance to the Patterson property, apparently acting as a lookout.[1]

At this point, one officer was sent to get a search warrant. Prior to his return, appellants Dean, Rapp, Piperata, and Rose attempted to leave the Patterson property, but were detained

---

[1] These facts were taken from the affidavit which was attached to the search warrant. As it turned out, Rose had remained at the airport, not Dean. The two are cousins and look somewhat alike. The misstatement of who remained at the airport would have no effect, however, on the magistrate's determination of probable cause.

until the warrants arrived, at which time all vehicles as well as the Patterson property were searched, and nearly two tons of marijuana discovered.

Appellants first contend the trial court erred in affirming the magistrate's determination of probable cause, which was based on a more detailed account than that recited above. We disagree.

"In dealing with probable cause, ... as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States*, 338 U. S. 160, 175, 69 S. Ct. 1302, 1310, 93 L. ED. 1879 (1949). The mere probability, that a crime is being committed, rather than a prima facie showing of criminal activity, is the standard probable cause. *Spinelli v. United States*, 393 U. S. 410, 419, 89 S. Ct. 584, 590, 21 L. Ed. (2d) 637 (1969).

Clearly, the facts of this case could lead a reasonable man to believe criminal activity was afoot. Here, appellants, who were the subjects of an intense two day surveillance, were observed loading an unknown cargo into an automobile, under a self-created cover of darkness.

Additionally, Dean's appearance at the Patterson residence served to reinforce the suspicion appellants were attempting to conceal something. We feel these facts, when considered in light of the prior events, provided sufficient justification for a reasonable man to suspect that criminal activity was in progress, and hold the issuance of the search warrants was supported by probable cause.

Appellant Rapp contends his brief involvement in the events occurring on April 15th did not support the trial court's determination that probable cause existed to search his car and trailer. We disagree.

A reasonable man would be warranted in believing Rapp's presence at the crime scene was not coincidental. He was observed, in the company of other suspects who were the subjects of an intense surveillance, driving a car which pulled a heavily loaded trailer to the Patterson home, where less than twenty-four hours before another car had surreptitiously loaded an unknown cargo and departed.

Probable cause does not mean absolute certainty. *State v. Williams*, 262 S. C. 186, 203 S. E. (2d) 436 (1974), cert. den., 419 U. S. 835, 95 S. Ct. 61, 42 L. Ed. (2d) 61; *State v. Peters*, 271 S. C. 498, 248 S. E. (2d) 475 (1978). While the present facts do not absolutely establish that Rapp was engaged in criminal activity, they do give rise to a reasonable inference to this effect. We hold the search of Rapp's vehicles was based on sufficient probable cause.

Rapp also asserts there was insufficient probable cause ▉ to stop his vehicle while a search warrant was sought, claiming his association with the co-appellants was the only suspicious fact of his conduct. We disagree in light of the intense surveillance together with other factors, especially the observation by police officers that Rapp's vehicle was heavily loaded.

A police officer may stop and detain an individual under certain circumstances. The circumstances must be sufficient to enable the officer to reasonably suspect and articulate that the individual is involved in criminal activity. *United States v. McCann*, 465 F. (2d) 147 (5th Cir. 1971); *United States v. McDaniel*, 550 F. (2d) 214 (5th Cir. 1977). For the officers to have ignored the facts they had observed and had been informed of would have constituted a dereliction of duty. We hold the officers properly detained Rapp until the warrant was actually delivered to the scene.

Appellants Rapp and Patterson also contest the trial court's ruling that they lacked standing to object to the search. As we have found probable cause existed, it is now unnecessary to address this question.

Affirmed.